## Murphy *v.* Johnson.

### (*Knoxville.* October 11, 1901.)

1. **BILL OF REVIEW.** *Does not lie, when.*

   Bill of review does not lie to review and reverse a decree of this Court, either for error apparent or for newly discovered evidence; and, for this purpose, a decree of the Chancery Court, entered pursuant to the mandate of this Court upon remand of a cause, is treated as the decree of this Court and is not renewable by a bill of review. (*Post, p. 556.*)

   Cases cited: Hurt *v.* Long, 90 Tenn., 445; Wallen *v.* Huff, 1 Shann. Cas., 4.

2. **BILL IN EQUITY.** *Substance, not name, determines its nature.*

   The substance, not the name given to it by the pleader, determines the nature of a bill in equity. (*Post, p. 557.*)

   Case cited: Arnold *v.* Moyers, 1 Lea, 308.

3. **DECREE.** *Coram non judice.*

   A decree not justified by the pleadings is void, whether rendered by this Court or by the lower Court. (*Post, p. 557.*)

   Case cited: Randolph *v.* Bank, 9 Lea, 63.

4. **SAME.** *Same. Case in judgment.*

   The decree in this cause is *coram non judice* and void as to the $1,250 averred by the bill, and admitted by the answer, to have been paid to the intestate in his lifetime, and not, therefore, chargeable to the administrator. (*Post pp. 556, 557.*)

---

FROM JEFFERSON.

---

Appeal from Chancery Court of Jefferson County. JOHN P. SMITH, Ch.

C. A. FRAME, EUGENE HOLTSINGER and PICKLE & TURNER for Murphy.

PARK & PARK for Johnson.

CALDWELL, J.    This bill denominates itself a bill of review, for error apparent as to one item and for newly discovered evidence as to another item of the decree challenged and enjoined.    It alleges that C. H. Johnson and his present co-defendants, as next of kin of W. C. Newman, deceased, heretofore filed their bill in the Chancery Court of Jefferson County against J. D. Murphy, as administrator of said Newman, and his present co-complainants as sureties on his administration bond, for an account and final settlement of Newman's estate; that the complainants in that bill, after stating certain preliminary facts, continued: "They aver, further, that said Newman owned little or no real estate at the time of his death, but that he owned a large personal estate.    This was made up of household and other property, amounting to some $400 or $500, as complainants have been informed, when sold by said administrator, but chiefly the assets consisted of the proceeds of a certain land sale made by said Newman lately before his death.    On September 7, 1889, said Newman had sold two tracts of mountain land, in all about 10,000 acres, to H. B. Wetzell and G. A. Rumsey, for the consideration of $6,000; of this amount $1,250 was paid in cash, and the purchasers executed to said Newman four notes of

$1,000 each, due in six, twelve, eighteen, and twenty-four months, and one other note for $750, due in thirty months from date, and an express lien was retained in the deed to secure these notes, which deed is registered in Book S, page 430, in Sevier County, Tennessee." Complainants aver that most, if not all, of these notes went into the hands of the administrator; "that defendants to that bill, besides admitting those preliminary facts, in their answer, said: 'It is true, that W. C. Newman owned no real estate at the time of his death, but it is not true he owned a large personal estate, consisting of household goods, etc., amounting to about $500, as respondents now remember, but exact amount will be shown in the proof. It is not true that the assets consisted chiefly of the pro-ceeds of a certain land sale made by the said New-man before his death. It is true that said W. C. Newman did, on September 7, 1889, assume to sell to H. P. Wetzell and G. A. Rumsey the lands mentioned in the bill, on the terms stated—that is, at the price of $6,000, $1,250 in cash, and balance in four $1,000 notes, due in six, twelve, eighteen, and twenty-four months, and one for $750, due at thirty months,' "but, title to the land having failed, J. D. Murphy, administrator, on advice of counsel and to avoid litigation, has surrendered to the makers all of the said notes, including one of those for $1,000, which Newman transferred to him for value; that the Chancellor heard the cause and ren-

dered a decree against the defendants therein for
$2,088.19; that, on appeal, the Court of Chancery
Appeals charged Murphy, as administrator, with
$6,000, the whole consideration of the land, with
interest thereon for nine years, eleven months, and
thirteen days, and after making some other charges
and allowing credit for certain outlays actually made,
pronounced a decree against him and his sureties for
a balance of $5,285.09; that the Supreme Court
affirmed that decree and remanded the cause for its
execution; that upon the remand a decree was en-
tered in the Chancery Court in conformity to the
*procedendo,* and that Murphy has since paid to the
Master $2,600 thereon."

These complainants, by further allegation, then
assail the decree for error apparent, because it
shows upon its face that it goes beyond and against
the pleadings, in that it charges Murphy, as admin-
istrator, with $6,000, the whole consideration for
the land, when the bill in that cause expressly
alleged, and the answer thereto explicitly admitted,
that $1,250 of that sum were paid in cash to New-
man in his lifetime; and, passing to the other item
of complaint, they allege the discovery of ample
new evidence to show that one of the $1,000 notes
with which Murphy is charged in the decree was,
in fact, his own property under a transfer thereof
by his intestate, Newman.

The prayer is for an injunction against the col-
lection of the balance of the impeached decree, and

that it be reviewed and set aside to the extent of the two items of $1,250 and $1,000 respectively, with their interest. The defendants demurred, and for cause of demurrer said that the Court had no jurisdiction to review a decree of the Supreme Court. The demurrer was sustained and the bill dismissed. The Court of Chancery Appeals affirmed the decree of the Chancellor, and the complainants have appealed again.

The decree on the *procedendo* was but an entry of the decree of this Court on the minutes of the Chancery Court without alteration, and being so, it is, for the purposes of the present proceeding, to be regarded as the decree of this Court—nothing more, nothing less. So regarded, it is beyond the reach of a bill of review, either for error apparent or for newly discovered evidence. *Hurt* v. *Long*, 90 Tenn., 445; *Wallen* v. *Huff*, 1 Shann. Cas., 4.

Nothing is plainer than that this decree, to the extent of the $1,250, with interest thereon, is wholly without warrant in the pleadings. Hence, to that extent, there is error of law apparent on the face of the decree, and it is such an error as might readily be corrected by a bill of review if the decree had been pronounced by the Chancellor, but not so having been pronounced by a Court of last resort, against which, as already seen, a bill of review, as such, will not lie for any reason or purpose.

However, though self-named a bill of review, and being such in form, the present bill is more, in substance and effect as to one of its items, than a mere bill of review, and not being restricted by its name (*Arnold* v. *Moyers*, 1 Lea, 308), the Courts will interpret and apply its allegations in their other and broader scope to meet the ends of justice. That other and broader sense or meaning of the allegations in reference to the item of $1,250 is that the decree, to that extent, is beyond and against the pleadings, and, therefore, void. So viewed, the bill as to that item may well be entertained as an original bill to annul and vacate a decree because *coram no judice;* and this is true in reference to the decree of any Court. Such a decree by this Court is subject to the same impeachment by such a bill as a like decree of the Chancellor, being invalid wherever rendered. *Randolph* v. *Bank,* 9 Lea, 63.

Reverse and remand as to the $1,250 item and affirm as to the $1,000 item.